## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **PETER TAMNY,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>**BANKROLL CAPITAL, INC.,** a California corporation, **AMERICAN BUSINESS SERVICES, INC.,** a Colorado corporation, **NARIT CHARANVATTANAKIT**, a California resident,<br><br>*Defendants.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Peter Tamny ("Plaintiff Tamny" or "Tamny") brings this Class Action Complaint and Demand for Jury Trial against Defendant Bankroll Capital, Inc. ("Defendant Bankroll Capital" or "Bankroll Capital"), Defendant American Business Services, Inc. ("Defendant ABS" or "ABS") and Narit Charanvattanakit ("Defendant Charan" or "Charan") to stop the Defendants from violating the Telephone Consumer Protection Act ("TCPA") by placing unsolicited pre-recorded calls. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff Tamny, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all

other matters, upon information and belief, including investigation conducted by his attorneys.

## PARTIES

1.      Plaintiff Tamny is a resident of Hudson, Florida.

2.      Defendant Bankroll Capital is a California corporation headquartered in Irvine, California. Defendant Bankroll Capital conducts business throughout the US, including in Florida.

3.      Defendant ABS is a Colorado corporation headquartered in Denver, Colorado. Defendant ABS conducts business throughout the US, including in Florida.

4.      Defendant Charan is a resident of Irvine, California who directs his employees to place calls throughout the US, including into Florida.

## JURISDICTION AND VENUE

5.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

6.      This Court has personal jurisdiction over the Defendants because the Defendants do business in this District and advertise to this District.

7.      Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendants do business in this District and the wrongful conduct giving rise to this case was directed from the Defendants into this District where the Plaintiff resides.

## INTRODUCTION

8.      As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls— 3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

9.      When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

10.     By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

11.     The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

12.     According to online robocall tracking service "YouMail," 4.3 billion robocalls were placed in July 2025 alone, at a rate of 139.5 million per day. www.robocallindex.com (last visited August 10, 2025).

13.     The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

14.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

15.     "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

## COMMON ALLEGATIONS

16.    Defendant Bankroll Capital provides capital to businesses throughout the US.[3]

17.    Defendant ABS provides capital to business throughout the US.[4]

18.    Bankroll Capital and ABS act interchangeably, as will be shown below.

19.    The pre-recorded voicemail that Plaintiff received was left by an agent named Kate.

20.    Kate is believed to be Kate Anderson, a Bankroll Capital employee:



21.    Anderson is also associated with American Business Services according to a LinkedIn profile:

---

[3] https://www.linkedin.com/company/bankroll/about/
[4] https://www.linkedin.com/company/absloans/
[5] https://www.zoominfo.com/p/Kate-Anderson/6111785265



22.    Plaintiff's attorneys attempted to locate "Kate Anderson" in Denver, Colorado, but other than a Kate Anderson who works for the Colorado government, she could not be located in or around Denver.

23.    In the case Scofield v. American Business Services Inc and Bankroll Capital Inc[7], Plaintiff Scofield received text messages from 740-895-1397.

24.    When 740-895-1397 was dialed, the voicemail of Kate Anderson was reached. The Kate Anderson voicemail identified 2 company names: American Business Services and Bankroll.

25.    When the phone number on Bankroll's website, 833-600-0031, was dialed, a live operator answered the call stating "American Business Service" and provided the website absloans.com. The two companies use their names interchangeably.

---

[6] https://www.linkedin.com/in/kate-anderson-b6829529a/
[7] 8:2022cv01515

26.     Bankroll Capital and ABS are owned/operated by Charan, who acts as the CEO for both of the companies.[8]

27.     Upon information and belief, Charan directs and ratifies the placement of calls to businesses and consumers throughout the US to generate business.

28.     Upon information and belief, Charan instructs that the calls be placed using the abbreviation "ABS" to avoid TCPA-related lawsuits against Bankroll for the unlawful telemarketing that the Defendants engage in to generate business.

29.     American Business Services is just a shell company designed to shield Bankroll Capital and Charan from liability for their unlawful telemarketing practices.

30.     Bankroll Capital and American Business Services have been sued in multiple lawsuits alleging violations of the TCPA. Those cases include:

- Floyd v. Bankroll Capital, Inc. – 5:2020cv03502 – filed 05/22/2020;

- Lee v. Bankroll Capital, Inc. – 4:2021cv00433 – filed 06/08/2021;

- Scofield v. Bankroll Capital Inc. et al (including American Business Services) – 8:2022cv01515 – filed 08/12/2022;

- Barack et al v. Bankroll Capital, Inc. – 4:2023cv00615 – filed 06/16/2023;

---

[8] https://www.linkedin.com/in/narincharan/

- Paisley v. Direct Funding Now LLC (including Bankroll Capital and American Business Services) – 0:2023cv61913 – filed 10/06/2023; and

- Shelton v. American Business Services Inc. et al – 1:2024cv00777 – filed 03/20/2024.

31.     As per the above, a TCPA lawsuit has been filed against a Charan-owned entity every year since 2020.

32.     The Defendants, for their joint benefit, place telemarketing cold calls to potential business owners to solicit their funding solutions.

33.     The Defendants use names like ABS to try and avoid liability for their unsolicited telemarketing activities.

34.     In fact, when 248-265-3031, the phone number that Plaintiff was called by is texted an email address, the response indicates a different company name: Sunset Bay Finance:



35.     The website for Sunset Bay Finance is nearly identical to the website for ABS:

---

[9] Based on an investigation conducted by Plaintiff's attorneys











36.    The website for Sunset Bay Finance does show that it is associated with

ABS:

---

[10] https://www.sunsetbayfinance.com/
[11] https://absloans.com/

9



37.    Sunset Bay Finance is just one of multiple unregistered company names the Defendants created to try and avoid liability for their unsolicited telemarketing.

38.    Former Bankroll employees have posted about their placing cold calls, including:



--------

[12] https://sunsetbayfinance.com/get-started
[13] https://us.bold.pro/my/jun-zhao-231011195802

**Bankroll**
Full-time · 1 yr
Irvine, California, United States

**Credit Officer**
Mar 2021 – Dec 2021 · 10 mos

• Closed over 100 deals for lenders and business owners
• Promoted to Credit Officer in March 2021
• Opportunities closed resulted in over $600,000 of sales for Bankroll from business funding
• Built relationships with business owners for renewed funding

**Loan Specialist**
Jan 2021 - Mar 2021 · 3 mos

• Administered over 5,000 cold calls to generate leads for business funding
• Trained Loan Specialist in cold calling, rebuttals, and strategy
• Leads generated resulted in over $100,000+ of sales from business funding
• Pitched solutions for small business owners to fund equipment, payroll, expansion

[14]

39.     The Defendants place unsolicited pre-recorded calls to consumer cell phones, as per Plaintiff's experience, under the guidance and direction of Charan.

40.     In response to these calls, Plaintiff Tamny brings this case seeking injunctive relief requiring the Defendants to cease from violating the TCPA, and an award of statutory damages to the members of the Class and costs.

### PLAINTIFF TAMNY'S ALLEGATIONS

41.     Plaintiff Tamny is the subscriber and the sole user of the cell phone number ending with 3726.

42.     On June 26, 2025 at 12:26 PM, Plaintiff Tamny received an unsolicited call to his cell phone from 248-265-3031.

43.     The call was not answered, but a pre-recorded voicemail was left stating:

---

[14] https://www.linkedin.com/in/mez-dick-9bb09b191/

"Hey, it's Kate at ABS. I was calling to update you on the business funding. This is actually my cell phone number. Do you mind sending me a text message with your email address so I can send those details over? Thanks, and I will keep an eye out. Bye."

44.    As per the screenshot, the name ABS is specifically mentioned, which is short for American Business Services.

45.    Plaintiff Tamny believes that this voicemail was pre-recorded because it sounds robotic, it sounds unnatural, it begins with nearly 3 seconds of silence and because it is generic.

46.    Consumers have posted complaints online about the same pre-recorded message that Plaintiff received, including:



---

[15] https://lookup.robokiller.com/p/657-671-1537
[16] https://www.google.com/search?q=%22Kate%22+%22ABS

Kate at ABS calling to update me on business funding. (SPAM)                                  December 18, 2024

Financial Service                                                    ⚑  17

47.     Plaintiff Tamny has never provided his cell phone number to any of the Defendants in any context or consented to be called by them.

48.     The unauthorized solicitation telephone call that Plaintiff received from the Defendants has harmed Plaintiff Tamny in the form of annoyance, nuisance, and invasion of privacy, occupied his phone line, and disturbed the use and enjoyment of his phone.

49.     Plaintiff Tamny listened to the entire voicemail that was left by the Defendants.

50.     Seeking redress for these injuries, Plaintiff Tamny, on behalf of himself and a Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

51.     Plaintiff Tamny brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

**Pre-recorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) the Defendants called on their cellular telephone number (2) using an artificial or pre-recorded voice.

---

[17] https://lookup.robokiller.com/p/415-737-9036

52.    The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, their subsidiaries, parents, successors, predecessors, and any entity in which either the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendants have been fully and finally adjudicated and/or released. Plaintiff Tamny anticipates the need to amend the Class definition following appropriate discovery.

53.    **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

54.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether the Defendants placed pre-recorded voice message calls to Plaintiff and members of the Pre-recorded No Consent Class without first obtaining consent to make the calls;

(b) whether the calls constitute a violation of the TCPA;

(c) whether members of the Class are entitled to treble damages based on the wilfulness of Defendants' conduct.

55. **Adequate Representation**: Plaintiff Tamny will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff Tamny has no interests antagonistic to those of the Class, and the Defendants have no defenses unique to Plaintiff. Plaintiff Tamny and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Tamny nor his counsel have any interest adverse to the Class.

56. **Appropriateness**: This class action is also appropriate for certification because the Defendants have acted or refused to act on grounds generally applicable to the Class and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendants' business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class

as wholes, not on facts or law applicable only to Plaintiff Tamny. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendants' misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiff Tamny and the Pre-recorded No Consent Class)

57.    Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

58.    The Defendants, or an agent working on behalf of the agents, transmitted unwanted telephone calls to Plaintiff Tamny and the other members of the Pre-recorded No Consent Class using a pre-recorded voice message.

59.    These pre-recorded voice calls were made *en masse* without the prior express consent of the Plaintiff and the other members of the Pre-recorded No Consent Class.

60.    The Defendants have, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendants' conduct, Plaintiff and the other members of the Pre-

recorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing his attorneys as Class Counsel;

b) An award of actual and/or statutory damages and costs;

c) An order declaring that Defendants' actions, as set out above, violate the TCPA;

d) An injunction requiring the Defendants to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Tamny requests a jury trial.

> **PETER TAMNY**, individually and on behalf of all others similarly situated,

DATED this 30th day of September, 2025.

By: */s/ Stefan Coleman*

Stefan Coleman
**Coleman PLLC**
18117 Biscayne Blvd, Suite 4152
Miami, FL 33160
law@stefancoleman.com
Telephone: (877) 333-9427

Avi R. Kaufman*
kaufman@kaufmanpa.com
**KAUFMAN P.A.**
237 South Dixie Highway, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*

*\*Lead Counsel for Plaintiff and the putative Class*